## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| PT. KENERTEC POWER SYSTEM, | ) |
| Plaintiff, | ) |
| and | ) |
| WIND TOWER TRADE COALITION, | ) Court No. 20-03687 |
| Consolidated Plaintiff, | ) (Consol.) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| PT. KENERTEC POWER SYSTEM and WIND TOWER TRADE COALITION, | ) |
| Defendant-Intervenors. | ) |

### DEFENDANT'S MOTION FOR PARTIAL VOLUNTARY REMAND

Pursuant to Rule 7(b) of the Rules of the United States Court of International Trade, defendant, the United States, respectfully requests that the Court remand, in part, the Department of Commerce's (Commerce) final determination in *Utility Scale Wind Towers from Indonesia,* 85 Fed. Reg. 40,241 (Dep't of Commerce July 6, 2020) (final countervailing duty determin.), P.D. 266, and accompanying Issues and Decisions Memorandum (IDM), P.D. 259 (Final Determination). We respectfully request a voluntary remand for Commerce to reconsider or further explain the upstream subsidy determination, and, if appropriate, recalculate the

countervailing duty rates for PT. Kenertec Power System (Kenertec) and all other Indonesian wind tower producters and exporters.[1]

## BACKGROUND

Consolidated plaintiffs filed actions challenging certain aspects of Commerce's final determination in the countervailing duty investigation of utility-scale wind towers (wind towers) from Indonesia. They principally focus on Commerce's findings regarding alleged government subsidization of cut-to-length steel plate (CTL plate), the primary input used in the wind towers' production.

For its part, Kenertec challenges Commerce's initiation of an investigation into the upstream subsidization of CTL plate (*see* Kenertec Br. at 18-24 (ECF Nos. 25-1 and 26-1)), certain procedural and substantive aspects of that upstream subsidy investigation (*see id.* at 24-35), and Commerce's determination that Kenertec received countervailable upstream subsidies at an *ad valorem* rate of 5.70 percent through its purchases of CTL plate from Krakatau POSCO. *See id.* at 35-44.

## ARGUMENT

We respectfully request that the Court partially remand the final determination back to Commerce. In *SKF USA*, the United States Court of Appeals for the Federal Circuit held that an agency "may request a remand (without confessing error) in order to reconsider its previous position." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). The Federal Circuit identified three situations in which the Government may seek a remand to the

---

[1]     We are filing this motion for partial voluntary remand contemporaneously with our response in opposition to the parties' respective Rule 56.2 motions for judgment on the agency record, in which we respectfully ask this Court to sustain the remainder of Commerce's final redetermination.

2

administering agency: (1) to reconsider a decision because of intervening events outside of the agency's control (*e.g.,* a new legal decision); (2) to reconsider a previous position absent intervening events; and (3) to change the result because the agency believes the original decision was incorrect on the merits. *Id.* at 1028-29.

Although the Court possesses discretion whether to grant a remand in such circumstances—for example, "[a] remand may be refused if the agency's request is frivolous or in bad faith"—"if the agency's concern is substantial and legitimate, a remand is usually appropriate." *Id*. at 1029. Notably, the holding of *SKF USA* was that the Court had abused its discretion in denying the Government's motion for voluntary remand. *See id*. at 1030. In short, in *SFK USA*, the Federal Circuit announced the controlling standard for the Court to decide motions for voluntary remand in a consolidated action such as this one. This standard affirms that an agency's power to make an administrative determination contains within it the power to reconsider that decision, as appropriate. *See United States v. Sioux Tribe*, 616 F.2d 485, 493 (Ct. Cl. 1980) ("It is a well established principle that an administrative agency may reconsider its own decisions. 'The power to reconsider is inherent in the power to decide.'" (citation omitted)).

In the final determination, Commerce determined, among other things, that each element under 19 U.S.C. § 1677-1(a) had been satisfied and that Kenertec had received countervailable upstream subsidies through its purchases of CTL plate. *See* IDM at 59-61. To make this determination, Commerce relied, in part, on its previous subsidy findings in *CTL Plate from Indonesia* and the 15.90 percent all-others rate that applied to Indonesian CTL plate producers. *Id*. at 57-63 (citing *Certain Cut-to-Length Carbon-Quality Steel Plate from Indonesia*, 64 Fed. Reg. 73,155, 73,163 (Dep't of Commerce Dec. 29, 1999) (final countervailing duty determin.) (*CTL Plate from Indonesia*). Commerce calculated this all-others rate based on a simple average

of the rates for three mandatory respondents—Krakatau Steel's 47.71 percent rate and the zero rates determined for two other companies. Krakatau Steel's 47.71 percent rate comprises the following six countervailable subsidy programs: (1) 1995 Equity Infusion into Krakatau; (2) Pre-1993 Equity Infusions to Krakatau; (3) 1989 Equity Infusion to the Cold Rolling Mill of Indonesia; (4) Three-Step Equity Infusion to the Cold Rolling Mill of Indonesia; (5) Two-Step Loan Program; and (6) Rediscount Loan Program. *See CTL Plate from Indonesia*, 64 Fed. Reg. at 73,159-162.

When calculating the upstream subsidy rate for Kenertec, Commerce recognized that the all-others rate in *CTL Plate from Indonesia* is a rate that is derivatively based on programs that were specific to Krakatau Steel and found that the following two countervailable subsidy programs were available to CTL plate producers such as Krakatau POSCO: the Two-Step Loan Program (0.65 percent) and the Rediscount Loan Program (5.05 percent). *See* IDM at 62; *CTL Plate from Indonesia*. The combined subsidy rate of 5.70 percent for these subsidy programs functioned as a "cap" on the competitive benefit for Kenertec, pursuant to section 1677-1(c), and Commerce included the 5.70 percent rate for the upstream subsidization of CTL plate in Kenertec's overall subsidy rate of 5.90 percent. IDM at 63.

Kenertec challenges Commerce's determination that Kenertec received countervailable upstream subsidies at an *ad valorem* rate of 5.70 percent through its purchases of CTL plate from Krakatau POSCO. *See* Kenertec Br. at 35-44. Kenertec asserts that Commerce impermissibly found the existence of upstream subsidies by incorporating into its analysis subsidy rates from the *CTL Plate from Indonesia* that were specific to Krakatau Steel and based on adverse facts available, including the Rediscount Loan Program that Commerce previously has found to be an export subsidy. *See id.* at 36-40. Kenertec argues that "Commerce's reliance on an export

4

subsidy in its calculation of Kenertec's *ad valorem* subsidy rate is a clear legal error." *Id.* at 39-40 (citing 19 U.S.C. § 1677-1(a) and 19 C.F.R. § 351.523(a)(1)(i)).  Kenertec has also raised other arguments regarding the upstream subsidy rate calculation.  *See id.* at 40-44.

In light of Kenertec's briefing on the issue, we respectfully request a partial voluntary remand for Commerce to reconsider or further explain the upstream subsidy determination and, if appropriate, recalculate the countervailing duty rate for Kenertec and all other Indonesian wind tower producers and exporters.

As noted above, a voluntary remand is "generally appropriate 'if the agency's concern is substantial and legitimate.'"  *SeAH Steel Corp. v. United States*, 704 F. Supp. 2d 1353, 1378 (Ct. Int'l Trade 2010) (quoting *SKF USA*, 254 F.3d at 1029); *see also Shakeproof Assembly Components Div. of Illinois Tool Works, Inc. v. United States,* 412 F. Supp. 2d 1330, 1338-39 (Ct. Int'l Trade 2005) (granting motion for voluntary remand, recognizing that the Government is presumed to act in good faith, and that this presumption may only be overcome by "well-nigh irrefragable proof").  "A concern is substantial and legitimate when (1) Commerce has a compelling justification, (2) the need for finality does not outweigh that justification, and (3) the scope of the request is appropriate."  *Changzhou Hawd Flooring Co., Ltd. v. United States,* 6 F. Supp. 3d 1358, 1360 (Ct. Int'l Trade 2014) (citing *Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States,* 925 F. Supp. 2d 1332, 1338-39 (Ct. Int'l Trade 2013)).

Here, there is a substantial and legitimate concern that makes it appropriate for the Court to grant our request for a partial remand.  This Court has stated that "{c}larifying and correcting a potentially inaccurate determination is a compelling justification {for voluntary remand}."  *Baroque Timber*, 925 F. Supp. 2d at 1339.  An upstream subsidy is defined as any countervailable subsidy other than an export subsidy.  *See* 19 U.S.C. § 1677-1(a); *see also* 19

C.F.R. § 351.523(a)(1)(i). We acknowledge that Kenertec has raised a potential concern regarding Commerce's final upstream subsidy determination and rate calculation, which included a program that Commerce previously has found to be an export subsidy, that is, the Rediscount Loan Program. The need to calculate subsidy rates is not outweighed by the interest in finality under these circumstances, *i.e.*, "'a routine appeal of a final determination.'" *Changzhou Hawd*, 6 F. Supp. 3d at 1361 (quoting *Baroque Timber*, 925 F. Supp. 2d at 1339). Further, our request asks for a remand to allow Commerce to evaluate whether it made an error in its upstream subsidy determination and, if so, recalculate the countervailing duty rate for Kenertec and all other Indonesian wind tower producers and exporters. Thus, the scope of the requested remand is appropriate because it is limited to the aspect of Commerce's final determination that is potentially erroneous.

Because we have demonstrated that our request for Commerce to reconsider its approach is in good faith and supported by substantial and legitimate concern, the Court should grant our request for voluntary remand to afford Commerce an opportunity to further evaluate its upstream subsidy calculation in light of Kenertec's brief.

## CONCLUSION

For these reasons, we respectfully request that the Court grant our motion for a voluntary partial remand for Commerce to reconsider or further explain the upstream subsidy determination and, if appropriate, recalculate the countervailing duty rates for Kenertec and all other Indonesian wind tower producers and exporters. Should the Court grant our request, we respectfully would request that the Court provide 60 days for Commerce to submit its remand redetermination to the Court to afford Commerce sufficient time to complete the remand redetermination.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Acting Assistant Attorney General |
|  | JEANNE E. DAVIDSON<br>Director |
| OF COUNSEL: | /s/ Patricia M. McCarthy<br>PATRICIA M. MCCARTHY |
| SAAD Y. CHALCHAL<br>Senior Attorney<br>Office of the Chief Counsel<br>   for Trade Enforcement & Compliance<br>U.S. Department of Commerce | Assistant Director<br>U.S. Department of Justice<br>Commercial Litigation Branch<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 307-0164<br>Fax: (202) 307-0972<br>Email: patricia.mccarthy@usdoj.gov |
| July 9, 2021 | Attorneys for Defendant United States |