UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JANE RESTANI, SENIOR JUDGE

| | |
|---|---|
| PT. KENERTEC POWER SYSTEM,<br><br>             Plaintiff,<br>     and<br><br>WIND TOWER TRADE COALITION,<br><br>             Consolidated Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>             Defendant,<br><br>     and<br><br>PT. KENERTEC POWER SYSTEM and<br>WIND TOWER TRADE COALITION,<br><br>             Defendant-Intervenors. | Court No. 20-03687<br>(Consol.) |

**RESPONSE OF PLAINTIFF PT. KENERTEC POWER SYSTEM TO DEFENDANT'S MOTION FOR VOLUNTARY REMAND**

Pursuant to USCIT Rule 7(d), on behalf of PT. Kenertec Power System ("Plaintiff" or "Kenertec"), we hereby provide this response to the Government's July 9, 2021 motion for partial voluntary remand.  *See* Def. Mot. For Partial Voluntary Remand, July 9, 2021, ECF. No. 35 ("Def. Mot. Voluntary Remand").  Kenertec submits that the Court should deny the Government's vague request for a voluntary remand "to reconsider or further explain and, if appropriate, recalculate the countervailing duty rate for Kenertec and all other Indonesian wind tower producers and exporters."  *Id.* at 5.  The Court should instead find that the Government's

1

delayed request constitutes waiver of its opportunity to defend Commerce's upstream subsidy calculation, and proceed to rule on the merits.

For the reasons discussed below, Kenertec would consent to the Court entering a limited, brief, and pointed remand to Commerce to correct the clear legal and factual deficiencies in Commerce's calculations raised in Kenertec's Rule 56.2 brief. Doing so would promote judicial efficiency because the only result supported by the record facts and the law is a *de minimis* subsidy rate, which would obviate the need for the Court to address Kenertec's challenges regarding the merits of Commerce's initiation and conduct in the upstream subsidy investigation. Bifurcating these calculation issues from the remainder of the appeal also would not prejudice Consolidated Plaintiff and Defendant-Intervenor Wind Tower Trade Coalition ("WTTC")'s claims, as they are distinct from the scope of Commerce's request for a voluntary remand.

> **A.      The Court Should Deny Commerce's Dilatory Request for Voluntary Remand to "Reconsider" its Erroneous Calculations**

The Government acknowledges in its Motion that it is requesting voluntary remand "{i}n light of Kenertec's briefing on the issue." Def. Mot. Voluntary Remand at 5. However, the Government does not explicitly confess error. *See id*. Instead, the Government claims that "Kenertec has raised a potential concern," that its determination is "potentially erroneous," and seeks a voluntary remand on its own undefined terms "to afford Commerce an opportunity to further evaluate its upstream subsidy calculation in light of Kenertec's brief." *Id.* at 6. As the Court has recognized, such a request at this late stage of the proceedings is improper. And, as discussed in Part B below, a request for a "do-over" to "reconsider" its determination without clearly stating its intentions, and without the Court first ruling on the merits, is particularly unnecessary in light of the clear legal deficiencies in Commerce's calculations the delay in requesting the remand. Accordingly, the Court should deny the Government's request for a

voluntary remand and instead issue a narrow remand for Commerce to remove the export subsidy in question from its calculations. There simply is no need for "reconsideration" on the agency's part at this stage of the proceedings.

Voluntary remand without addressing the merits is inappropriate when "Commerce did not even brief the issue . . . relying instead on its unsupported request for remand to delay the day of reckoning." *Corus Staal BV v. United States*, 29 CIT 777, 783 (2005) (alterations added) (denying Government motion for voluntary remand on calculation issues). Indeed, as the Court has explained in the context of a similar delayed voluntary remand request:

> This was a disservice to the court, as the court must resolve this issue. The interests of both plaintiffs and defendants depend on the prompt and orderly resolution of these matters, which Congress clearly intended. The Government must give due regard to finality and cannot simply ask for a do-over any time it wishes.

*Id.* And, as the Court has held, voluntary remand is inappropriate where, as here, "the Government does not provide a compelling justification or clearly define the scope of the request that would lead the court to conclude that Commerce's concern is substantial and legitimate." *Hyundai Heavy Indus. Co., Ltd. v. United States*, 393 F. Supp. 3d 1293, 1301-02 (Ct. Int'l Trade 2019). Moreover, requesting a remand "so that {Commerce} can 'reconsider its decision,'" without appropriate explanation, "is insufficient to support a voluntary remand." *Id.* (citing *Corus Staal BV v. U.S. Dep't Commerce*, 27 CIT 388, 391 (2003)).

Indeed, Kenertec respectfully submits that, by filing a request for voluntary remand on the day its response brief was due, Commerce has waived its opportunity to defend its inclusion of the export subsidy in the upstream subsidy calculation and a directed remand is the only appropriate outcome. *See*, *e.g. NEXTEEL Co., Ltd. v. United States*, 355 F. Supp. 3d 1336, 1348 (Ct. Int'l Trade 2019) (finding, in light of the Government's improper and dilatory request for a voluntary remand that "the Government has waived its right to argue the issue on the merits.")

*accord Hyundai Heavy Indus.*, 393 F. Supp. 3d at 1301 (finding the matter "ripe for decision" despite the Government's failure to brief the issues in favor of a voluntary remand request on the date that briefs were due).  While the Government has responded to arguments that Commerce improperly initiated and subsequently reached a facts-available determination without the benefit of any investigation or fact-gathering, it has declined to respond to the upstream subsidy calculation issue in its response brief, instead requesting a voluntary remand that simply asserts it will "reconsider or further explain" its determination.  The Government did not provide any substantive defensive arguments on this issue.  Accordingly, Kenertec respectfully submits that the Court should determine that the Government has waived its right to argue the calculation issue on the merits.

> **B.  The Court Should Issue A Directed Remand to Commerce on the Calculation Issue Consistent with The Plain Language of the Statute and the Record**

While Kenertec wholly disagrees with Commerce's determination to include any element of claimed upstream subsidies in Kenertec's countervailing duty ("CVD") calculations, as discussed in Kenertec's opening brief at pages 35-44, Commerce's calculations included three fundamental errors:  (1) Commerce impermissibly included an adverse facts available ("AFA") rate in its calculations, (2) Commerce impermissibly included an export subsidy in the calculations, and (3) Commerce impermissibly carried the prior CVD rates from Commerce's 1999 CVD investigation of *CTL Plate from Indonesia* directly into Kenertec's subsidy rate without first calculating a subsidy benefit to wind towers as a result of any perceived upstream subsidy.

While Kenertec submits that each of these three errors identified above warrant remand, Government's Voluntary Remand Motion appears to only focus on one of these errors -- number two above, Commerce's decision to include an export subsidy in the calculations.  *See* Def. Mot.

4

Voluntary Remand at 6 ("{w}e acknowledge that Kenertec has raised a potential concern regarding Commerce's final upstream subsidy determination and rate calculation, which included a program that Commerce previously has found to be an export subsidy, that is, the Rediscount Loan Program.")  It appears that Commerce intends to focus solely on this error, without addressing errors one (*i.e.,* including AFA rates) and three (*i.e.,* failing to calculate an *ad valorem* subsidy rate) identified above.  See Def. Mot. Voluntary Remand at 5 ("Kenertec has also raised . . . arguments {other than the export subsidy}").  Accordingly, we likewise focus here solely on Commerce's inclusion of an export subsidy in the final determination calculations.

With respect to the Rediscount Loan program included in the upstream subsidy calculations, both Kenertec and the Government appear to agree that Commerce cannot include this program in the subsidy calculations.  Indeed, as the Government itself states, "{a}n upstream subsidy is defined as any countervailable subsidy other than an export subsidy."  Def. Mot. Voluntary Remand at 5 (citing 19 U.S.C. § 1677-1(a) and 19 C.F.R. § 351.523(a)(1)(i)).  With Commerce having previously found this program to be an export subsidy, all Commerce would need to do on remand is simply remove the Rediscount Loan from the calculations.  Correcting this one error would revise the calculations as follows:

| Program | Final Determination Rate | Remand Determination Rate |
|---|---|---|
| Upstream Subsidy - Rediscount Loan Program | 5.70% | -- |
| Upstream Subsidy - Two-step Loan Program | 0.65% | 0.65%[1] |
| Electricity for LTAR | 0.17% | 0.17% |
| Exemption from Import Income Tax Withholding for Companies in Bonded Zones | 0.03% | 0.03% |
| **Total** | **5.90%** | **0.85% (de minimis)** |

This is not a complicated legal, factual, or mathematical question. There simply is no need for an open-ended remand for Commerce to "reconsider or further explain" these deficiencies. Def. Mot. Voluntary Remand at 5. While the Government's motion does not indicate how the Government intends to address this issue in its requested remand, the Government's motion and the above table demonstrates that there is only one possible outcome here: Commerce revises the calculations to remove the 5.70 percent upstream subsidy it incorrectly included in Kenertec's rate, resulting in a CVD rate of no higher than 0.85 percent for Kenertec and all other producers. Because this 0.85 percent rate is *de minimis*, Commerce's revised determination on remand would be a negative countervailing duty determination and Commerce accordingly would be required to revoke the Order in its entirety.

---

[1] As identified as calculation issue three above, and explained in Kenertec's Rule 56.2 brief, when calculating Kenertec's *ad valorem* subsidy rate, Commerce was required to calculate the <u>amount</u> of benefit from the upstream subsidy under 19 C.F.R. § 351.525(a), by multiplying the subsidy rate for the CTL plate upstream input by the value of Kenertec's related CTL purchases, then dividing that benefit by Kenertec's wind tower sales denominator to calculate an upstream subsidy rate for Kenertec's wind towers. *See* Kenertec's Rule 56.2 brief at 43-44. While removing the export subsidy at issue (*i.e.,* the Rediscount Loan Program) from Commerce's calculations results in a *de minimis* rate, thereby making this point moot, Kenertec raises the issue here to make clear that Kenertec does not believe including this rate in any remand calculations is appropriate.

## C. The Court Should Address the Voluntary Remand Motion With a Goal of an Expeditious Resolution to the Question

As an initial matter, Kenertec stresses that it first alerted Commerce to this obvious error over a year ago via ministerial error comments it filed with the agency shortly after Commerce issued its Final Determination.[2]  *See* Letter from Kenertec "Ministerial Error Allegation" (Jul. 7, 2020) P.R. 267, C.R. 264.  Although Commerce determined that this error was not a "ministerial error," Kenertec's ministerial error filing (and its prior response to WTTC's upstream subsidy allegation) put the agency on notice that its calculations contained this fundamental error.  Commerce has also been aware that this error was a key focus of this litigation for months, via Kenertec's October 26, 2020 complaint and April 7, 2021 Rule 56.2 Motion.  The Government could have elected to file its motion for voluntary remand at any time, but instead chose to wait until the last possible moment, simply submitting the motion for voluntary remand along with its response brief, with the vague promise "to reconsider or further explain" its prior decision, Def. Mot. Voluntary Remand at 1, but without any response whatsoever to the issues raised in Kenertec's Rule 56.2 Motion.

During this entire period, Kenertec has remained subject to countervailing duty deposits and suspension of liquidation.  Moreover, Commerce's first administrative review will begin in the next few months (with Commerce having issued its CVD order in August 2020, parties can request administrative reviews in August 2021, and Commerce will initiate the review in early October 2021).  Of course, there is no need for Commerce and parties to undertake the effort,

---

[2] Kenertec also highlighted this issue prior to Commerce issuing any upstream subsidy decision or calculations in its February 12, 2020, comments in response to WTTC's upstream subsidy allegation.  *See* Letter from Kenertec "Resubmission of Kenertec's February 12, 2020, Rebuttal Comments and Factual Information in Response to WTTC's Upstream Subsidy Allegation" (Feb. 20, 2020) at 19, P.R. 220, C.R. 238.

7

time, and expense to proceed with an administrative review if the Order is revoked, which, as discussed above, is the only logical outcome.

Kenertec is cognizant of the fact that in any scenario the Court will need to address WTTC's affirmative arguments via an opinion on the merits, but resolving the threshold question of whether Commerce can include an export subsidy in its upstream subsidy calculations will likely go a long way towards ultimately resolving this case. Kenertec respectfully suggests that the Court could resolve this question either via a remand order on this issue alone, while briefing and argument on the remaining issues proceed, or the Court could simply include the issue in its merits opinion to be issued in this appeal, without granting Commerce's request for voluntary remand.

In any event, under no circumstances does Kenertec believe that a 60-day remand period as the Government has requested is justified or necessary. As discussed above, revising the calculations is a straightforward exercise. The Government has already had over a year to think through this issue (all the while keeping in place an entirely unjustifiable and unsupported CVD Order), and appears to have acknowledged Commerce's error in including an export subsidy in its calculation of the upstream subsidy. Depending on how the Court addresses the issue, a period of 30 days should be sufficient for Commerce to prepare a remand limited to correcting this clear error in the calculations.

**D.      Conclusion**

For the foregoing reasons, the Court should deny the Government's eleventh hour vague request for a voluntary remand, and instead issue direct instructions to recalculate Kenertec's *ad valorem* subsidy rate in a manner consistent with the record facts and the statute.

Respectfully submitted,

 /s/ J. David Park
J. David Park
Henry D. Almond
Daniel R. Wilson
Leslie C. Bailey
Kang Woo Lee
Henry B. Morris

*Counsel to PT. Kenertec Power System Plaintiff*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone:  (202) 942-5000
Fax:  (202) 942-5999
E-mail:  David.Park@apks.com

**Dated:  July 19, 2021**

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JANE RESTANI, SENIOR JUDGE

| | |
|---|---|
| PT. KENERTEC POWER SYSTEM,<br><br>    Plaintiff,<br>  and<br><br>WIND TOWER TRADE COALITION,<br><br>    Consolidated Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>  and<br><br>PT. KENERTEC POWER SYSTEM and<br>WIND TOWER TRADE COALITION,<br><br>    Defendant-Intervenors. | Court No. 20-03687<br>(Consol.) |

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Chambers Procedures, the undersigned hereby certifies that the attached Response to the United States' Motion for Voluntary Remand by PT. Kenertec Power System, dated July 19, 2021, contains 2,227 words according to the word count function of the word-processing system used to prepare this memorandum, exclusive of the counsel's signature block.

                By: /s/ J. David Park
                    J. David Park

Dated:  July 19, 2021